Mr. Goodwin. Yes, sir. Come on up. Thank you, Your Honors. You may please the court. The summary judgment of the case below should be reversed because the claim term and issue is not indefinite. The term, a contact hole for the gate wiring and source wiring connection terminals is defined in the specification. That definition in the specification matches the state of art and the knowledge in the art at the time of the invention. Despite the fact that all of the intrinsic and extrinsic evidence points to one conclusion, that the Can I ask you this question? Assume for the purposes of this question that I were to agree with you that the claim language as read in light of the specification encompasses separate holes for the separate terminals. What would tell me one way or the other whether it excludes the additional scenario of a single hole containing both terminals, access to both terminals? Includes both the definition in the specification and the state of art at the time of the invention. The definition specifically sets forth that the term means a contact hole for a source wiring connection terminal and a contact hole for a gate wiring connection terminal. The evidence that shows the state of the art is both in the prosecution history and You're correct, Your Honor. It's column 31. Column 31 lines 49 through 53. It doesn't quite say we hereby define this particular claim phrase in this particular way. This is more of a descriptive section of a particular figure for embodiment D. It does define the term in original claim 5, which corresponds with embodiment D, and while it does not use explicit definitional language, the language or the definition is not seeking to impart a novel understanding of the term. It's not seeking to impart a meaning that's different from what is known in the state of the art. In fact, it matches exactly the state of the art, and as this court said in Bell Atlantic versus Kovad Communications, an explicit definitional format is actually not required, and in this case, it's a definition that matches the state of the art and is not inconsistent or trying to put a novel in. Supposing we say that your language is clear, but erroneous. In this case, the language is clear to one of ordinary skill in the art, and that's the proper standard for applying the interpretation of the claim, and one of ordinary... You're saying A-hole doesn't mean A-hole. A-hole for each of the connection terminals, and the claim recites, the claim step G-8 recites four different types of contact holes. It refers to a contact hole, a type of contact hole that reaches the drain electrode, a type of contact hole that reaches the gate wiring, and a type of contact hole that reaches the connection terminals. Can you explain the difference between the gate wiring and the gate terminal connection? Yes, your honor. If you picture a liquid crystal display, a TV or a computer monitor, there are connection terminals, for example, they may be the source wiring connection terminals that provide the data that tell the picture what color to display along the top edge of the display, and there are connection terminals for the gate, which tell which line to turn on at a time. So there are thousands of connection terminals along the top edge and the side edge. Those connection terminals are connecting the source wiring and the gate wiring to the scanning circuits and the data circuits that provide the signals to the TV or to the computer monitor. The contact hole for the gate wiring is separate and distinct from the contact hole for the connection terminals. That's shown in each of the embodiments on the right-hand side of the figure, and the purpose for a connection to the gate wiring is it allows for an electrical connection between the conductive film used to form the gate wiring and the conductive film used to form the source wiring. And the contact hole for the gate wiring and the contact hole for the gate wiring connection terminal, those are created in the same photolithographic step? I couldn't quite see, I mean, I tried my best to read this path, and I couldn't quite follow how those two contact holes would be created in the same photolithographic step. Is there somewhere in the spec that would show me that? That would show you that they're formed in the same photolithographic step? Right. The specification explains that the contact holes for the connection terminals are formed in that step, the photolithographic step, the G8 step for the G embodiment, and the contact hole for reaching the gate wiring is also formed in that photolithographic step. One of skill in the art would know that... Right, but I guess my question was a little more specific. Where in the spec can I see how you can accomplish both of those hole creations in the same photolithographic step? It's shown in the figures in the patent. Referring, for example, to figure 65, excuse me, 61, which is at Appendix, Joint Appendix page 57, it shows how a contact hole can be made to reach the gate wiring, which is 211, and the contact hole that can be formed to reach the second metal layer, which is at 212, or as well as 210. So, as shown in the figure... Those are the drain electrodes and source wiring, sure? Correct, and as explained for Claim 5, the construction of Claim 5, the contact hole for the gate wiring connection terminal and source wiring connection terminal are formed at the same time. Those two are formed at the same time, but let me repeat my question. My question was the contact hole for the gate wiring and the contact hole for the gate wiring connection terminal. Yes, Your Honor. How do those get done at the same time? Now, I understand you've got Embodiment D, right? And you've got all these pieces where it's being formed. It's not completely illustrated, but it's discussed. But now we're over here in Embodiment G, and your claim here on this patent, and now this claim is saying you can do these two things at the same time, and that's not reflected in Embodiment D. What's reflected in the description of forming the contact holes, and what was known at the time was the contact holes for the source wiring connection terminal and gate wiring connection terminal were formed at the same time. We know that already. Figure 61 also shows that you can form a contact hole reaching the gate wiring to 11 at the same time. It's all done in the same step. Yeah, but you're pointing us to a figure, which you need to, because this is Embodiment G, that is completely silent on the whole question of forming the contact hole or holes for the source wiring connection terminal and the gate wiring connection terminal. So, I guess what I'm saying is just based on the four corners of the patent, you're asking us to make a little leap. Now, maybe it doesn't make a difference when it comes to just understanding this particular phrase, but I just had this background question of maybe, I don't know if it's an enablement question or something else, but how do these two things get made at the same time when the only place where I can find in the patent where they're both getting made and actually being discussed is Embodiment D and they're being done in different photolithographic steps. It would be recognized by one of skill in the art by looking at the figures and knowing that the passivation film was deposited on top of the source wiring and the gate wiring that they would both need to be, contact holes would need to be formed to allow for electrical connection to that external driving circuitry. You would need to remove that insulation above the conductive layer. This figure, figure 61, shows how you can etch the passivation layer to get to the first conductive layer and the second conductive layer. So, one of ordinary skill in the art, looking at figure 61 and reading the corresponding text in the specification, would know how to form those contact holes to each of those structures. With respect to the description in column 31, the definition of the term requires that each of the contact holes are formed for the source wiring and gate wiring connection terminals. It was known in the intrinsic record from the prosecution history. That was the state of the art. Contact holes were formed for both source wiring and the gate wiring connection terminal. The point of novelty that I think that you are getting to about the contact hole reaching the gate wiring and the contact hole for the gate connection terminal was the dispute during the re-examination. During re-examination, the defendants recognized that contact holes for the source wiring connection terminal were separate and distinct from contact holes. The examiner said it would be inoperable otherwise, right? The examiner interpreted originally the construction applying a contact hole as being one and only one contact hole for both. That was an improper construction and ultimately the examiner came to the conclusion that they were separate contact holes. He said it would be inoperable otherwise. It's not necessarily inoperable and that's not one of the arguments that we're making about inoperability. In fact, whether it's operable or inoperable on the contact holes and whether they're formed at the same time is not the dispute. The dispute is whether they're forming a single hole or separate holes. The state of the art at the time of the invention was separate holes. The examiner rejected the claims based on the prior art that showed separate holes and the patentee in both the original prosecution and in the re-examination did not distinguish the invention from that cited prior art because the cited prior art showed separate contact holes for each and the claim required a separate contact hole for each. You're into your rebuttal time. I do want to just come back to the question I started with. I don't think I have heard an answer to the question on the assumption that the de-embodiment specification discussion makes clear that this language includes separate holes. I don't yet know why it excludes single holes for both. Based on the understanding of one's skill in the art and the declarations... What turns on that? What's the practical consequence in this case for not distinguishing between the more capacious definition and the narrower definition if they both include the separate hole scenario? One skill in the art would have recognized in the declaration of Dr. Smith that was submitted which shows why one of skill in the art would not have interpreted the term to be a contact hole for both was that at the time of the invention, workers in the field understood that large contact holes such as would be required to cover all of the connection. I know that there are declarations that say, boy this would have been weird at the time. Not impossible but supremely weird. I'm trying to understand, are you going to lose on infelicity if it's broader or is there a stronger infelicity case if it's broader? I'm trying to understand the consequences because it seems to me that the language of the claim is readily capable of covering both. Your Honor, we don't lose if the term is construed to mean a contact hole for one or a contact hole for each or a contact hole for both or a contact hole for each. It's simply that Eidos has continuously proposed a single one construction that the term is meant as it would have been understood by one of ordinary skill in the art and the way it was practiced at the art at the time of the invention and that was that it was a separate contact hole for each connection terminal. In fact, we admit that the prior art specifically discloses a separate contact hole for each connection terminal. Thank you, Your Honor. If you have any other questions, I'll reserve my time for them. I'll break up to two minutes and if you're opposing counsel next floor, set that to 60. Good morning, my name is Chris Benson. Set that to 60. I'm sorry, excuse me. My name is Chris Benson. I'm representing all the defendants. We had a little bit of a mix up on the oral argument order. The reason that this case should be affirmed is that it starts all with the reexamination and the reexamination group or examiners attempt to interpret this claim from the get-go. Right off the bat, he says in both the grant of reexamination, which is at 60-59-62, and in the first office action, which is at 11-78-81, I believe, the reexamination examiner says this claim is unclear for two reasons. The first reason is that the G8 step, third limitation, is inoperable. He says, we'd have a short. We'd have a short going across both the source and the gate lines and then the thing wouldn't work. And the problem, the dilemma, that the reexamination examiner had was, he said, but I can't touch 112-2. I've got to stay, of course, I've got to go down the road. Do I understand the claim construction that you propose is a claim construction that would render the thing inoperable? I don't believe so, but there have been arguments. So you disagree with the examiner about the inoperability of a single hole with both connections? Yes, and we also disagree with Eidos who says that it would be inoperable. We disagree with statements made at the claim construction hearing that it would be inoperable and statements made by the defendants, excuse me, by Eidos' experts that it would be inoperable. The reason is, in the G embodiment, we have 10 steps, 5 photolithographic steps where you etch. So the 8th step, which is the 4th photolithographic step, you're etching to create these 3 holes that are clearly described in the spec. Then in G9, you're laying down a conductive film that's clear. And then after that, you have the G10 step. And in the G10 step, you have another photolithographic step where you etch away stuff. And so in that G10 step, you can eliminate any potential shorting, like you do in almost any semiconductor process. It's just one layer on top of another. You may have a semiconductor layer on top of a metal layer on top of a semiconductor layer on top of all sorts of different layers. So yes, it would be operable. We believe it would be operable. Now, the district court thought that because the re-examination examiner believed it was inoperable, he thought there has to be a problem here. And so based on that body of evidence and all the other evidence we submitted, it shows that one of ordinary skill in the art reading this would literally believe it's a 3-hole process. That's what the language says. What they've said is you have to go into the D embodiment, not in G, and find this statement that only describes one figure. Suppose that I thought that the language of the claim was a little bit unclear, unclear in the way that large numbers of perfectly definite claims are, where the lack of clarity on the face of the language gets resolved by reference to, in particular, the specification. Suppose I thought that, then what remains of your argument that this is indefinite? The fact that the D embodiment has nothing to do with the G embodiment. That's one thing. The second thing is this argument about this being a definition, the first time we ever thought… Let's stop right there for a second. I can understand that's your argument. D is different from G. But D does give us some information because it talks about separate contact holes for these different connection terminals. And then when you look at the corresponding original claim 5, which was basically the claim that corresponded to embodiment D, we're looking at the exact same claim phrase, right? No, we're not. We're not in original claim 8 to the extent that both of those original claims said a contact hole for source wiring and gate wiring connection terminals. So there's an inference chain you can make. You've got to take some steps, but they're there where you can say that this is the way they draft the contact holes for these connection terminals across the board for all their originally filed claims. And then the one place where they give you some detail in the spec as to what they mean with that language, they represent and show and disclose two separate contact holes for the two different connection terminals. Yeah, there's a number of reasons, but let's just go to D. D is describing, I think, it's figure 36. And it's talking about two separate contact holes, 132 and a separate one, the gate wiring connection terminal, not shown. Then you have to take a leap and change the literal meaning of the term, a contact hole for source wiring and gate wiring connection terminal, especially in view of the language of claim 1-8. Let's assume for the moment that what was the patented claim here was original claim 5. No. I know. This is a hypothetical. This is a hypothetical. We're in fairy tale land right now. Okay. Okay. Come with me. I will. Originally filed claim 5 is what's at stake here. And now we're trying to figure out what does claim 5 mean when it said a contact hole for source wiring and gate wiring connection terminals. Well, we would probably look at the disclosure section for environment D. And lo and behold, now it's very, very clear to us what may have been initially unclear to Judge Toronto and me as well. It becomes clarified that we're talking about separate contact holes for the source wiring connection terminals and the gate wiring connection terminals. Would you agree with that? No. The reason is because often, and I've been doing this for about 30 years, but often you have claims not matching the spec. And here you have plain language. The plain language in the spec, as found by the reexamination examiner initially, he said it means three holes. And the third hole being one hole for both source wiring and gate wiring connection terminals. Well, the examiner came out and said it implicitly means two holes. I mean, the examiner did ultimately. He came to that after he was fixing the operability because he had to follow the broadest reasonable interpretation standard and he was hogtied into not looking at 112.2 issues. But the other thing is, look at the context of the G8 spec. You've got a contact hole for gate wiring. Okay, so you're moving away from fairytale land back to the real world? I'm sorry. I'll go back into fairytale land again. Okay. So, number one, the literal language of the claim and the literal language of the D section are two different things. And if you look at that plain, the plain language, it is different. And so, because we have literal plain language in the claim, you have to follow that and there's a heavy presumption against going into the spec necessarily and changing it, especially when you've got to go to D. There is no definition here. The one thing that they brought up in the reply brief is that there's some definition that a hole for gate wiring and source wiring connection terminals means two separate holes. There's nothing there connecting D to claim 8 slash 1 or to 5. There's no connection. There's no definition, no words connecting. And there's no implicit statements throughout this patent. There's nothing in the prior art that ever did these connection terminals with a shared contact hole. Is that right? Not that we're aware of, but the point of novelty in this case, if you look at what the re-examination examiner said, and also in the original… I think Judge Toronto said it would be weird to have them all using the same contact hole. Yeah, and that may be the point of novelty of this claim. And in fact, look at the re-examination statement. This thing is like, I don't know, 58 columns. They don't say anything like that in this patent. Say what? That this is our point of novelty. Eureka. Okay. Shared contact hole for all the connection terminals. All right. This is a big moment. All right. What they do say, what the examiner said in the original prosecution and what the re-examination grant and the first office action is that they said that the G8 step was the point of novelty, and that's how they got away from WCAI, the primary reference in the original prosecution and one of the primary references that is in this prosecution. This aspect of the G8 step, namely whether there is… They didn't specifically say which aspect, but there is no doubt, and we all agree, that getting a contact hole to the gate wiring, nothing new. Getting a hole to the drain electrode and the same stuff, nothing new. The only point of novelty could have been, and what it is we believe, is that you have a third hole that goes to both the source and gate wiring connection terminals. That's why it works, because it is the point of novelty. And I don't believe there's any dispute about that. What would that contact hole look like? It would probably be an L-shaped trench at least, that's one way. Now remember, if you look at how do you work that, you deposit the conductive metal film over the top, you have a clear conductive metal film, so you have the pixel electrode, and then you're in G10, G8 puts down the film, in G10 you etch, and you can etch away a short very easily, that's one way. Another way, and this is what Dr. Silzar, one of our experts said, and another way to do it would be having asymmetrically conductive material, where the conductive material only conducts in one direction, up and down, sideways, whatever. Here it would be up and down. So it could be done, there's no doubt about it. There's no other point of novelty in this claim. The only thing they point to is the G8... Maybe you have a 102 defense. We may also have a 112 defense, but we'll see. But right now, the plain language of that claim, it carries a heavy presumption that's what it means. It's the point of novelty of the claim. And so, they're trying to manufacture a definition here where there isn't one. I understand that you can go in D and say, well let's look at the embodiment. Well, the embodiment in D, describing 132 and a whole not shown, does not match the claim language. So that by itself, as we say, may cause some of these people of ordinary skill in the art to think, what's going on here? So, that led to a number of other steps. And quite frankly, that Eidos made, later during the process of interpreting the claims and then in the indefiniteness arguments, where they constantly are making it more and more indefinite by statements they make, including their final proposal, which we call E2 or the fourth proposal for this term, where they say that it could mean either the defendant's proposal or their original proposal. So, with all that evidence, that's why the district court came out and found this claim indefinite. I believe, Mr. Benson, that you at least think you're back out of fairytale land. I think so. I'm sorry. I don't want to be in fairytale land. Poof. Any other questions? Thank you. Thank you. Mr. Goodwin, you've got two. He was in fairytale land. First, out of fairytale land, the point of novelty was indeed the G8 step, but it was not the contact holes for the connection terminals. In fact, the prior art specifically showed separate contact holes. What was it? It was the separate contact hole reaching the gate wiring that was separate and distinct from the contact hole from the gate wiring connection terminal. Defendants argued during the re-examination that there were separate contact holes for the connection terminals, but their three-hole theory in the re-examination was that the contact hole reaching the gate wiring was the same as the contact hole reaching the gate wiring connection terminal. That was the point of novelty, the separate gate wiring connection terminal hole. Also... And that isn't expressly disclosed in your Embodiment G. It is expressly disclosed in Embodiment G. Well, Embodiment G's disclosure is silent as to where and how you ultimately etch and create the contact hole for the gate wiring connection terminal. It would be formed using the same method of reaching the contact hole for the gate wiring. It would be formed in the same step as reaching the contact hole for the source wiring connection terminal and the contact hole reaching the drain electrode. It would be done in the exact same manner, etching the exact same material. And that's how one of ordinary skill would know that forming those contact holes would be done. The figure... You agree with me that in Embodiment D, the formation of the contact hole for the gate wiring... Correct. Okay. And one of skill would know that whatever materials were present at the time of the manufacturing process would need to be removed. Every material layer above the gate wiring would need to be removed to form a contact hole reaching the gate wiring. So looking at the figures for the de-embodiment, making the contact hole reaching the gate wiring only required etching through one passivation layer or one insulation layer. Whereas in the G embodiment, it shows etching through two passivation layers. But it's just simply removing the material down to expose the underlying conductive film. Goodwin, you want to summarize? Yes. Quickly, defendants' literal language is not the proper standard. Their argument that it's the same contact hole for both connection terminals was specifically rejected by the magistrate who held that it was not one. And the proper standard is that A means one or more as this court has repeatedly held. Thank you. Thank you. Thank you, counsel. These cases are all submitted and we are adjourned. All rise.